UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-23362-MOORE/MCALILEY

MAMA JO'S, INC. d/b/a BERRIES,

     Plaintiff,

v.

SPARTA INSURANCE COMPANY, *et al.*

     Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTIONS FOR COSTS AND ATTORNEYS' FEES

Pending before the Court is Defendant Sparta Insurance Company's ("Sparta") Motions for Costs and Attorneys' Fees. (ECF Nos. 148, 157). The Motions have been fully briefed, (ECF Nos. 149, 155-56, 161, 165), and the Honorable K. Michael Moore referred them to me for a report and recommendation, (ECF Nos. 150, 158). For the following reasons, I recommend that the Court grant the Motions in part.

## I.    BACKGROUND

This case arose from an insurance coverage dispute between Plaintiff Mama Jo's, Inc. d/b/a Berries ("Berries") and Sparta. (ECF Nos. 1, 102). During the policy period, roadway construction near Berries' restaurant caused dust and debris to enter the restaurant. (ECF No. 143 at 4). Berries continually cleaned the restaurant, and the restaurant remained open every day. (ECF Nos. 116-8 at 3-7, 116-9 at 19-29). In December 2014, Berries submitted a claim to Sparta for costs incurred as a result of the cleaning and for loss of

1

business income due to the dust and debris. (ECF Nos. 143 at 4, 161 at 2). After conducting its own investigation, Sparta denied Berries' claim in January 2017, concluding that cleaning dust and debris did not constitute "physical loss of or damage" to the property, and therefore, the policy did not cover Berries' claim. (ECF No. 110-13).

In May 2017, Berries filed suit against Sparta for breach of contract. (ECF No. 1 at 3). Berries initially sought damages totaling $308,826.42, comprised of costs associated with its cleaning of the restaurant and loss of business income.[1] The parties engaged in extensive discovery. *See* (ECF Nos. 105, 106, 110, 111). Near the end of the discovery period, Berries supplemented its damages to include replacement of the restaurant's awning and retractable roof systems, HVAC repairs, and replacement of the restaurant's audio and lighting systems, which increased the damages sought to $592,056.57.[2]

Sparta moved to strike Berries' supplemental damages as untimely, which the Court denied. (ECF Nos. 71, 84 at 7-8, 92). Immediately thereafter, Sparta deposed Berries' three expert witnesses who were designated to testify regarding causation, in support of the supplemental damages that Berries sought. (ECF No. 165 at 4). A few days after these depositions concluded, and shortly before the discovery period ended, Sparta offered Berries $10,000.00 to settle the action in full, pursuant to Florida's offer of judgment

---

[1] Berries sought $16,275.58 for physical damage to the restaurant and $292,550.84 for loss of business income. (ECF No. 20 at 4).

[2] Berries sought $319,688.57 for physical damage to the restaurant, $268,368.00 for business income loss, and $4,000.00 for claims data expenses. (ECF No. 84-3 at 7-8).

statute, Fla. Stat. § 768.79. (ECF No. 157-1). Berries did not accept the offer. (ECF No. 161 at 3).

Sparta then moved for summary judgment and to preclude the testimony of Berries' expert witnesses on causation. (ECF Nos. 105, 106). On June 11, 2018, the Court granted both motions. (ECF No. 146).[3] The Court found that Berries could not recover the initial damages sought because "cleaning is not considered direct physical loss," and therefore, the policy did not cover Berries' claim. (*Id.*). The Court also found that Berries could not recover the supplemental damages sought because its causation experts used unreliable methodologies. (*Id.*). The Court precluded those experts from testifying and found that Berries could not prevail because it lacked expert testimony establishing causation. (*Id.*).

Sparta now seeks an award of $111,146.00 of attorneys' fees it incurred after it made its offer of judgment and through entry of summary judgment in its favor, under Florida's offer of judgment statute, Fla. Stat. § 768.79. (ECF No. 157 at 6-7). Berries argues that Sparta is not entitled to the award because Sparta did not make the offer in good faith, and even if Sparta is entitled to attorneys' fees, the amount is excessive because it includes unnecessary work and block billing. (ECF No. 161). Sparta also seeks an award of costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, totaling $12,354.81. (ECF Nos. 148, 149). Berries argues that certain costs should be eliminated or reduced because they were unnecessary or unreasonable. (ECF No. 155).

---

[3] The Eleventh Circuit Court of Appeals later affirmed those decisions. (ECF No. 186).

For the reasons explained below, I conclude that Sparta is entitled to an award of reasonable attorneys' fees and costs, but that the amounts sought should be reduced. With this background in mind, I begin with Sparta's request for attorneys' fees.

## II.     ATTORNEYS' FEES

### A.     <u>Entitlement</u>

Each party is generally responsible for its own attorneys' fees unless a statute or enforceable contract requires the opposing party to pay those fees. *Rothenberg v. Sec. Mgmt. Co., Inc.*, 736 F.2d 1470, 1471 (11th Cir. 1984) (citation omitted). Sparta seeks an award of attorneys' fees under Fla. Stat. § 768.79, which provides:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability . . . .

Fla. Stat. § 768.79(1).[4] Berries objects, arguing that Sparta's offer does not satisfy the good faith requirement set forth in § 768.79(7)(a) and Rule 1.442(h)(1).[5] (ECF No. 161). Section 768.79(7)(a) states:

> If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.

---

[4] Sparta also relies upon Rule 1.442 of the Florida Rules of Civil Procedure. There is no dispute that Sparta satisfied the requirements of this Rule, other than the good faith requirement discussed *infra*. *See* (ECF No. 161).

[5] The language in Fla. R. Civ. P. 1.442(h)(1) mirrors the language in Fla. Stat. § 768.79(7)(a).

Fla. Stat. § 768.79(7)(a). Berries has the burden of proving that Sparta did not make its offer of judgment in good faith. *See McMahan v. Toto*, 311 F.3d 1077, 1083 (11th Cir. 2002). Sparta's offer was in good faith if it had a "reasonable foundation on which to base the offer." *Miccosukee Tribe of Indians of Fla. v. Lewis Tein P.L.*, 277 So. 3d 299, 302 (Fla. 3d DCA 2019) (citation omitted). The Court should focus on Sparta's subjective motivations and beliefs, and the objective facts and circumstances of the case, at the time Sparta made its offer. *Id.*

Berries argues that the following demonstrates Sparta's bad faith: (1) the offer of $10,000 was nominal compared to Sparta's potential liability in excess of $500,000; (2) liability rested on a novel issue regarding the meaning of "direct physical loss" under the insurance policy and the offer did not reflect the closeness of that question; and (3) Sparta made the offer soon after the Court denied Sparta's motion to strike Berries' supplemental claim for damages and this timing is suspect. (ECF No. 161 at 4-8). I address each argument in turn.

First, a nominal offer does not indicate bad faith so long as the offeror had a reasonable basis to believe, at the time it made the offer, that its exposure was minimal. *Matrisciani v. Garrison Prop. and Cas. Ins. Co.*, 298 So. 3d 53, 61 (Fla. 4th DCA 2020) (citation omitted); *see also Morris v. Ariz. Beverage Co., L.L.C.*, No. 03-60907 Civ, 2005 WL 5544961, at *6-7 (S.D. Fla. Feb. 9, 2005) (good faith where defendant offered $1,500 despite plaintiff's claimed damages of over $150,000) (collecting cases). Sparta explains that it extended its offer believing that Berries was not entitled to any

compensation under the policy. (ECF Nos. 157 at 3, 165 at 3). The facts and circumstances of this case support the reasonableness of Sparta's belief.

Sparta investigated Berries' claim before Berries filed suit and determined that the property sustained no physical damage from the roadway construction. (ECF No. 110-13). Given the absence of physical damage, Sparta concluded that coverage did not exist and denied the claim. (*Id.*). Sparta then engaged in extensive discovery which confirmed (if not strengthened) its position, as evidenced by the summary judgment motion it filed shortly after it made the offer, which the Court later granted. (ECF Nos. 106, 146). Florida courts have found good faith under these circumstances, despite the nominal amount of the offer.[6] *See e.g., Mount Vernon Fire Ins. Co. v. New Moon Mgmt., Inc.*, 239 So. 3d 183, 185 (Fla. 3d DCA 2018) (finding an abuse of discretion where the trial court determined that a $1,000 offer was made in bad faith when the insurer initially denied the claim for water damage because the policy did not cover the claim, then engaged in substantial discovery and moved for summary judgement within a week of serving its offer, which the Court granted); *Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc.*, 53 So. 3d 348, 354 (Fla. 4th DCA 2011) (defendant never wavered from its position that the contract was unenforceable, which contributed to a finding of good faith); *Jacques v. Wal-Mart Stores East, L.P.*, No. 18-60072-CIV, 2020 WL 5027358, at *2 (S.D. Fla. Jan. 13, 2020) ("although not controlling on this issue, the reasonableness of the Defendant's assessment

---

[6] Berries' reliance on *James v. Wash Depot Holdings, Inc.* is misplaced because in *James*, unlike here, a jury found defendant liable on one of the plaintiff's claims. *James*, 489 F. Supp. 2d 1336, 1341 (S.D. Fla. 2007).

of its exposure is bolstered by the fact that it obtained a favorable judgment . . . . In this case, in light of the fact that summary judgment was granted in favor of the Defendant, there is no basis for a finding that the Defendant's offers were not made in good faith.").

Second, Berries asserts that Sparta did not have a reasonable basis to make a nominal offer because courts are split regarding whether the damage Berries suffered falls within the meaning of "direct physical loss." (ECF No. 161 at 6-7). I am not persuaded. The cases Berries relies upon are distinguishable because they involve property rendered uninhabitable or substantially unusable,[7] or do not contemplate the meaning of "direct physical loss."[8]

---

[7] *See Mellin v. N. Sec. Ins. Co., Inc.*, 167 N.H. 544, 550-51 (N.H. 2015) (cat urine odor rendered condominium unusable); *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 412-13 (D. Conn. 2002) (asbestos and lead contamination in buildings); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *5-7 (D. Or. Aug. 4, 1999) (odor or other effects to retail products rendered the products unable to be sold as new); *Matzner v. Seaco, Ins. Co.*, No. CIV. A. 96-0498-B, 1998 WL 566658, at *1, *4 (Mass. Super. Ct. Aug. 12, 1998) (high levels of carbon monoxide in an apartment building rendered building uninhabitable); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) (potential for rocks and boulders to come crashing down at any time rendered homes uninhabitable); *Farmers Ins. Co. of Or. v. Trutanich*, 858 P.2d 1332 (Or. Ct. App. 1993) (illegal methamphetamine cooking caused physical damage to home).

[8] In *Crosslink Grp., LLC v. Fid. & Guar. Ins. Underwriters, Inc.*, the insured submitted several claims to its insurer, some of which included damage to artwork from flooding and construction dust. No. 1:08-CV-2656-ODE, 2010 WL 11549940, at *2 (N.D. Ga. Feb. 23, 2010). The insurer advanced the insured money to use for cleaning the damaged artwork due to the dust. *Id.* The insured filed suit years later. *Id.* at *6. The Court, on summary judgment, did not address the extent of the damage or the meaning of "direct physical loss," and found material facts were in dispute. *Id.* at *6-12. In *Bellsouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 605 (2d Cir. 1996), the Court addressed when a claim for property damage caused by asbestos accrues under the Connecticut Product Liability Act, because the building owners sued the manufacturer of fireproofing material that contained asbestos.

For its part, Sparta relied upon various cases which support its position that cleaning otherwise undamaged property does not constitute "direct physical loss."[9] (ECF No. 106 at 3-4). The Court relied upon those cases when granting summary judgment to Sparta, (ECF No. 146 at 17-18), as did the Eleventh Circuit in affirming this Court's decision. (ECF No. 186 at 23). Further, as the Eleventh Circuit noted, Florida courts have found that "direct physical loss" requires actual damage. *See Vazquez v. Citizens Prop. Ins. Corp.*, Nos. 3D18-779, 3D18-769, 2020 WL 1950831, at *3 (Fla. 3d DCA 2020); *see also Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017). This authority does not support the conclusion that the issue of policy interpretation here was as novel as Berries believed it was.

Last, Berries argues that the timing of Sparta's offer evidences bad faith. (ECF No. 161 at 6, 8). Berries, however, does not explain how this is so, and it is not apparent that there is anything improper about the timing of Sparta's offer. To the contrary, the timing of Sparta's offer supports the reasonableness of Sparta's belief that its exposure was minimal: Sparta made its offer when it was well-informed of its potential liability at the end of the discovery period and after Sparta deposed Berries' causation experts. *See Matrisciani*, 298 So. 3d at 61 (Fla. 4th DCA 2020) ($1,000 offer made after two years of

---

[9] *See Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) ("[Cleaning expenses] are not tangible, physical losses"); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) ("[D]irect physical loss 'contemplates an actual change in insured property . . . .'"); *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 308 (2003) (same).

extensive discovery was in good faith because at that time, defendant had a reasonable basis to conclude its exposure was nominal).

For the foregoing reasons, I conclude that Berries has not met its burden to establish that Sparta did not have a reasonable foundation on which to base its offer. Sparta is therefore entitled to an award of attorneys' fees under Fla. Stat. § 768.79.

B.     Amount of Fees

Sparta seeks attorneys' fees totaling $111,146.00. (ECF No. 157). "A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action." *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) (citing *ACLU of Ga. v. Barnes*, 168 F.3d 423, 432-33 (11th Cir. 1999)). "The first step in computing a reasonable fee is to determine the lodestar, which is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation omitted).

The reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (citation omitted). The Court may use its own knowledge and experience in determining the reasonableness of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted). Berries does not

object to the reasonableness of the hourly rates that Sparta's counsel seeks,[10] (ECF No. 161 at 9), and the Court, based upon its own knowledge and experience, agrees that those hourly rates are reasonable.

Berries does, however, object to the number of hours that Sparta's counsel expended, which total 576. (ECF No. 161 at 9-17). This figure represents the time that Sparta's four attorneys and a paralegal spent defending this action from the date Sparta served its offer of judgment until the date Sparta prevailed on summary judgment. (ECF No. 157 at 6-7). Sparta properly supports its request with time records that reflect the work that its attorneys and paralegal performed, (ECF No. 157-2), and a supporting affidavit attesting to the reasonableness of the fees, (ECF No. 157-3). Berries objects to certain time entries, arguing that they are (i) excessive, duplicative or unnecessary, (ii) include block billing, (iii) include time spent on Sparta's unsuccessful motion for reconsideration to strike Berries' supplemental damages, and (iv) include travel time. (ECF No. 161). I address each argument below.

### 1.   Excessive, Duplicative or Unnecessary Fees

Berries specifies the time entries that it contends reflect excessive, redundant or unnecessary fees, (ECF No. 161 at 14-17), and I have carefully reviewed those entries. Berries argues that it is "unreasonable and excessive for [the] partner with the highest hourly rate" to review certain court filings. (*Id.*). I disagree. A partner has an obligation to

---

[10] The hourly rates are: $190.00 for Jorge A. Maza, $205.00 for David A. Wagner, $205.00 for Matthew C. Henning, $250.00 for Holly S. Harvey, and $90.00 for Jessica Real (paralegal). (ECF No. 157).

keep apprised of court developments even if there are junior lawyers on the team and, as a general matter, the amount of time spent was not excessive, as each entry totaled 0.10 hours. I do agree that in certain instances the time spent was excessive, namely where there are multiple entries on the same day for reviewing brief court filings.[11] I therefore conclude that a reduction of 0.50 hours is warranted with respect to the number of hours that Ms. Harvey reasonably expended. *See Norman*, 836 F.2d at 1301 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (reasonable attorneys' fees do not include "excessive, redundant or otherwise unnecessary" hours)).

Berries also objects to time entries relating to a pretrial report that Sparta's lawyers prepared for its client,[12] arguing that such work is unnecessary to the defense of the case. (ECF No. 161 at 16). Sparta does not explain how this report was reasonably necessary for its defense. *See* (ECF No. 165 at 9). While it may have been necessary for purposes of client relations, that is not the test when determining whether Plaintiff should be obligated to assume that expense. I agree that the hours spent preparing a pretrial report for Sparta were unnecessary and thus, not compensable.

Moreover, Berries objects to time entries for work Sparta performed on the day the Court entered its Omnibus Order granting Sparta summary judgment. (ECF No. 161 at 16-

---

[11] In particular, Ms. Harvey billed a total of (i) 0.30 hours on March 16, 2018 for reviewing three Notices of Service of Process, which should be reduced to 0.10 hours, (ii) a total of 0.20 hours on March 26, 2018 for reviewing two brief paperless orders, which should be reduced to 0.10 hours and (iii) a total of 0.30 hours on May 31, 2018 and June 1, 2018 for reviewing Plaintiff's motion for leave to file surreply, which should be reduced to 0.10 hours. (ECF No. 157-2 at 17, 22, 52, 57, 58).

[12] These time entries are for Jorge A. Maza on May 31, 2018 (totaling 7.80 hours) and June 1, 2018 (totaling 2.80 hours). (ECF No. 157-2 at 52-53, 58).

17). Sparta acknowledges that it does not seek fees for work performed after the entry of judgment but argues that work performed that day, before the Court entered summary judgment, is compensable. (ECF No. 165 at 9). I agree that entries for work done after the Court entered its summary judgment order are not compensable.[13] For the foregoing reasons, I conclude that a reduction of 11.60 hours is warranted with respect to the number of hours that Mr. Maza reasonably expended[14] and that a reduction of 0.40 hours is warranted with respect to the number of hours that Ms. Harvey reasonably expended.

Other than as specified above, I find that the challenged time entries do not reflect excessive, duplicative or unnecessary work.

    2.   <u>Block Billing</u>

Berries challenges several timesheet entries on the basis that they constitute impermissible block billing. (ECF No. 161 at 10-11). "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). "[T]he mere fact that an attorney has included

---

[13] These time entries are for Jorge A. Maza on June 11, 2018 as follows: (i) five entries for 0.10, (ii) one entry for 0.30, and (iii) one entry for 0.20. (ECF No. 157-2 at 66-67). For Holly S. Harvey, the time entry on June 11, 2018 is for 0.40. (ECF No. 157-2 at 66). I note that Sparta concedes to Mr. Maza's entry for 0.30 and Ms. Harvey's entry for 0.40 on June 11, 2018. (ECF No. 165 at 9). I find that the remaining challenged entries on June 11, 2018 are recoverable because they reasonably relate to work performed before the Court entered its order on summary judgment.

[14] Berries also objects to Mr. Maza's June 8, 2018 entry for drafting a motion to strike because Sparta never filed the motion. (ECF No. 161 at 16). Sparta could not know that the Court would enter summary judgment the next business day, which would make the draft motion moot. The fact that Sparta did not file this motion does not demonstrate that the time Mr. Maza spent writing it was unnecessary.

more than one task in a single entry is not, in and of itself, evidence of impermissible block-billing." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, No. 09-80918-CIV, 2011 WL 13108095, at *3 (S.D. Fla. Apr. 7, 2011) ("when multiple listed tasks in one entry are intertwined or related, including a thorough description of the activities performed clarifies, rather than obscures, the record and does not constitute improper block billing.") (quotation marks and citation omitted). It is proper for an attorney to provide detailed time records that lists several closely related tasks. *Id.* at *4. The question is whether the Court can calculate the number of hours an attorney devoted to a particular task to determine the reasonableness of the time spent. *Id.* at *3.

Some of the challenged billing entries contain redactions which leave the Court unable to determine whether the tasks are closely related, and whether the work performed is duplicative, excessive or unnecessary.[15] Despite Berries' objection, Sparta did not submit unredacted versions of these billing entries to the Court for *in camera* review, or otherwise explain the subject matter of the redacted information. The Court is thus unable to evaluate whether these entries constitute impermissible block billing.

As for the remaining entries, the vast majority identify tasks that are intertwined or related, where Sparta provides thorough descriptions of the work performed. There are three entries, though, that list multiple distinct tasks which cannot reasonably be combined

---

[15] These time entries are for David A. Wagner on June 9, 2018 (3.50 hours) and June 10, 2018 (2.0 hours) and Jorge A. Maza on the same days (3.50 hours and 2.0 hours, respectively). (ECF No. 157-2 at 65). They amount to block billing.

in a single billing entry.[16] Sparta does not attempt to allocate the time billed to each of the tasks identified in those entries, and therefore "it is impossible to fairly divvy up the claimed hours without engaging in speculation." *Miller's Ale House, Inc.*, 2011 WL 13108095, at *3.

I recognize that the redacted and block billed entries reflect work that Sparta's attorneys performed. The problem is that Sparta has offered no basis on which the Court can determine whether the number of hours billed for those entries is reasonable. As such, I conclude that the redacted and block billed entries identified above should be excluded from Sparta's fee award, which results in a reduction of 14.90 hours for Mr. Wagner and 5.50 hours for Mr. Maza.[17] *See id.* ("If a fee request contains improper block billing, courts may either reduce the requested hours or eliminate block billed entries altogether.").

### 3.   Motion for Reconsideration

Berries objects to time entries relating to Sparta's preparation of its unsuccessful Motion for Reconsideration of my Order that denied Sparta's motion to strike Berries' supplemental damages.[18] (ECF No. 161 at 12-13). Sparta asserts that it is improper to exclude fees for filing an unsuccessful motion where the party otherwise prevails on all

---

[16] These time entries are for David A. Wagner on April 24, 2018 (0.70 hours), June 7, 2018 (2.70 hours) and June 11, 2018 (6.0 hours). (ECF No. 157-2 at 34, 61, 66).

[17] Berries also objects to entries for David A. Wagner on June 11, 2018 for 2.40 hours and on June 15, 2018 for 4.20 hours as block billing; however, there are no such entries in Sparta's billing records. *See* (ECF No. 157-2).

[18] These time entries are for David A. Wagner on March 18, 2018 (4.0 hours), March 21, 2018 (2.80 hours), March 22, 2018 (3.70 hours), March 23, 2018 (5.0 hours), March 26, 2018 (2.0 hours), April 11, 2018 (2.0 hours), April 12, 2018 (1.50 hours), April 13, 2018 (2.50 hours), April 14, 2018 (3.50 hours and 1.0 hours) and April 16, 2018 (7.0 hours), and for Jorge A. Maza on June 5, 2018 (0.10 hours). (ECF No. 157-2 at 17, 19-21, 28-29, 59).

claims asserted against it. (ECF No. 165 at 7-8). It is true that a prevailing party can still recover attorneys' fees for time spent on motions that are denied. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 346 F. App'x 403, 404 (11th Cir. 2009) ("[T]he law in this circuit is that a prevailing party entitled to attorneys' fees is not to be penalized for failed motions.") (citation omitted). The relevant inquiry is not whether the motion was successful, but whether it was necessary.

In my Order Denying Sparta's Motion for Reconsideration, I found that Sparta did not show that any of the limited circumstances that justify reconsideration applied. (ECF No. 138). I noted that Sparta's then pending *Daubert* and summary judgment motions were the proper vehicles for Sparta to raise the issues discussed in its Motion for Reconsideration. (*Id.* at 4). These same reasons lead me to conclude that Sparta's Motion for Reconsideration was unnecessary, and the Court should exclude the associated billing entries from Sparta's fee award. *See Gonzalez v. Batmasian*, No. 9:16-cv-81696, 2018 WL 10732947, at *1 (S.D. Fla. Mar. 12, 2018) (denying fees for time spent on unsuccessful motions because they lacked a reasonable basis for the relief sought and, thus, amounted to unnecessary work). Accordingly, I recommend that the Court deduct 35.0 hours for Mr. Wagner and 0.10 hours for Mr. Maza because these hours reflect unnecessary work.

### 4.   Travel Time

Berries objects to travel time that Sparta's lawyer incurred traveling from Miami to Connecticut to attend the telephonic deposition of Sparta's corporate representative. (ECF No. 161 at 13). As Sparta recognizes, necessary travel time may be compensable.

*See Graham v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-13502-J-34JBT, 2017 WL 6190643, at *3 (M.D. Fla. Nov. 17, 2017). Sparta offers no explanation why these hours were necessary given that Berries' counsel took the deposition telephonically. *See* (ECF No. 165 at 8). A lawyer may reasonably choose to be physically present with his client during a telephonic deposition, but that choice does not make the lawyer's presence necessary. Given that Sparta provides no reason why its attorney had to be present in Connecticut for his client's telephonic deposition, I conclude that the challenged entries are not compensable. Therefore, I recommend that the Court deduct 8.50 hours for Mr. Maza's travel time because those hours reflect unnecessary work.[19]

C.   <u>Conclusion</u>

I have thoroughly reviewed the timesheets that Sparta's counsel submitted and find that, other than the reductions specified above, the number of hours sought is reasonable. Accordingly, I conclude that Sparta's counsel reasonably expended the following hours defending Sparta from the date it served its offer of judgment through entry of summary judgment in its favor: **226.60** hours for Jorge A. Maza, **220.20** hours for David A. Wagner, **21.90** hours for Matthew C. Henning, **2.20** hours for Holly S. Harvey, and **28.60** hours for Jessica Real.

Based upon the foregoing, I recommend that the Court award Sparta **$95,808.50** in reasonable attorneys' fees.

---

[19] *See* (ECF No. 157-2 at 18, 42).

## III.   COSTS

Sparta seeks costs totaling $12,354.81. (ECF Nos. 148, 149). Rule 54(d) of the Federal Rules of Civil Procedure states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d).  Berries does not dispute that Sparta is the prevailing party, (ECF No. 155), and Sparta is clearly entitled to recover its reasonable costs.

Title 28 U.S.C. § 1920 sets forth what may be taxed as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees and expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. As the prevailing party, Sparta "bears the burden of submitting a request for costs that will enable the Court to determine what costs were incurred and whether [Sparta] is entitled to them." *Santana v. RCSH Operations, LLC*, No. 10-61376-CIV, 2012 WL 3779013, at *2 (S.D. Fla. Aug. 31, 2012) (quotation marks and citation omitted). Berries objects to several costs. (ECF No. 155). I address each category of Sparta's costs.

A.      Fees of the Clerk

Sparta seeks to recover the $400.00 filing fee it paid to the Clerk to remove this action to federal court and provided an email receipt of that payment.[20] Berries does not object. (ECF No. 155). "Fees of the clerk and marshal include filing fees and are clearly taxable." *Fam. Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) (citations omitted). Most courts in this District routinely award a removal fee to a prevailing defendant. *See e.g., Guerra v. Se. Freight Lines, Inc.*, No. 13-22070-CIV, 2014 WL 6751589, at *5 (S.D. Fla. Aug. 8, 2014) (taxing removal fee under § 1920); *Covington v. Ariz. Beverage Co., LLC*, No. 08-21894-CIV, 2011 WL 810592, at *3 (S.D Fla. Jan. 25, 2011) (awarding removal filing fee "because the fee has been explicitly recognized as a taxable 'fee of the clerk' under 28 U.S.C. § 1920(1)"); *Newman v. Hous. Auth. of City of Fort Lauderdale*, No. 06-60359, 2007 WL 315098, at *2 (S.D. Fla. Jan. 31, 2007) (removal fee "is unquestionably a fee of the clerk"). I recommend that the Court award Sparta the **$400.00** removal fee.

B.      Fees for Service of Summons and Subpoenas

Sparta seeks to recover $775.00 in process server fees for the service of five subpoenas for deposition[21] and eight subpoenas *duces tecum*.[22] (ECF No. 149 at 3). Sparta

---

[20] *See* (ECF No. 149-1 at 5).

[21] Sparta served subpoenas for depositions upon Robert Snider, Robert Inguanzo, and Steven Edmonson. (ECF No. 149-1 at 39, 40, 42). Sparta served subpoenas for a deposition upon Luis De Freitas twice. (ECF No. 149-1 at 37, 44).

[22] Sparta served subpoenas *duces tecum* upon Bruce Smith, Emmaculate Reflections, LCD Estimators, Inc., F.R.I. Public Adjusters, Bloom Gettis & Habib, P.A., Safepoint Insurance

provided invoices to the Court for each fee,[23] and Berries does not object to four of the fees.[24] I address Berries' objections below.

        1.      Safepoint, Greenwich, & Citizens Insurance Companies

Sparta served subpoenas upon three insurance companies (Safepoint, Greenwich, and Citizens Property Insurance); each cost $90.00 for service plus a $15.00 statutory fee, for a total of $105.00 each.[25] Berries objects because this cost exceeds the amount charged by the U.S. Marshals for service. (ECF No. 155 at 2). At the time service of process occurred, the U.S. Marshals charged $65.00 per hour for each item served. 28 C.F.R. § 0.114(a)(3). "This Circuit has held that § 1920(1), read in conjunction with 28 U.S.C. § 1921, authorizes a court to tax private process servers' fees as costs, provided that their rates do not exceed the cost of having the U.S. Marshal's Service effectuate service." *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. May 14, 2007) (citing *EEOC v. W&O, Inc.*, 213 F.3d 600, 623-24 (11th Cir. 2000)).

Sparta concedes that these fees exceed the Marshals Service rate. (ECF No. 156 at 1-2). It agrees that the Court should reduce each service fee to $65.00 but asserts that the Court should also award the $15.00 statutory fee because it is imposed under Florida law.

---

Company, Greenwich Insurance Company, and Citizens Property Insurance Group. (ECF No. 149-1 at 35, 36, 38, 41, 43, 45-47).

[23] *See* (ECF No. 149-1 at 35-47).

[24] Berries does not object to the fees associated with the subpoenas *duces tecum* served upon Emmaculate Reflections and Bloom Gettis & Habib, P.A., the deposition subpoena served upon Luis De Freitas on December 14, 2017, and the deposition subpoena served upon Robert Inguanzo, for a total of $170.00. (ECF No. 155 at 2-5).

[25] *See* (ECF No. 149-1 at 45-47).

(*Id.* at 2). Specifically, Florida's Chief Financial Officer is the registered agent for the service of subpoenas upon insurance companies in Florida, Fla. Stat. § 624.422, and Florida law requires a $15.00 fee for the Chief Financial Officer to effectuate service. *See* Fla. Stat. § 624.502. Given that Florida law requires payment of the $15.00 fee to accomplish service of process upon an insurance company, I conclude that the fee falls within the scope of § 1920. *See Core Constr. Servs. Se., Inc. v. Crum & Forster Specialty Ins. Co.*, No. 6:14-cv-1790, 2016 WL 1554349, at *2 (M.D. Fla. March 21, 2016), *report and recommendation adopted*, No. 6:14-cv-1790, 2016 WL 1546491 (M.D. Fla. Apr. 15, 2016) (awarding the $15.00 statutory fee as a taxable cost under § 1920).

In sum, I recommend that the Court award Sparta $80.00 in service costs for each of the three insurers for a total of $240.00.

### 2.    Robert Snider and Steven Edmonson

Berries contends that fees for service of deposition subpoenas upon Robert Snider and Steven Edmonson were unnecessary because they are officers and shareholders of Berries, and thus, Sparta should have compelled their testimony pursuant to a notice of deposition. (ECF No. 155 at 2). This objection is disingenuous. Berries directed Sparta to serve those individuals, stating "Please make sure [Robert Snider and Steven Edmonson] are properly served as we do not represent them." (ECF No. 156-1). Berries cannot now complain that Sparta followed its instructions. I therefore find that costs for serving deposition subpoenas upon Messrs. Snider and Edmonson are recoverable under § 1920.

Berries argues in the alternative that the fee for serving Steven Edmonson, which totals $80.00, should be reduced to $65.00 because it exceeds the Marshals Service rate.

(ECF No. 155 at 2). Sparta argues that the full cost is recoverable because the process server was required to serve Mr. Edmonson at an additional address. (ECF No. 156 at 3). Sparta does not explain why service could not be effectuated at the initial address provided to the process server. Sparta has failed to meet its burden, and I therefore conclude that the cost for serving Mr. Edmonson should be reduced to $65.00. *See Carroll v. Carnival Corp.*, No. 16-20829, 2018 WL 1795469, at *3 (S.D. Fla. Feb. 6, 2018) ("[W]here a party seeks costs for multiple service attempts, the party must provide evidence justifying the need for multiple service attempts.") (quotation marks and citations omitted). For the foregoing reasons, I recommend that the Court award Sparta $105.00 in process server costs for Mr. Snider and Mr. Edmonson. [26]

3.   Bruce Smith

Berries identified Mr. Smith as its "Forensic and Investigatory Accountant" in its initial disclosures and included Mr. Smith in its witness list for trial. (ECF Nos. 20, 134). Sparta issued a subpoena *duces tecum* to Mr. Smith, which Berries argues was unnecessary because Mr. Smith prepared only one report, which Sparta already had in its possession at the time it served the subpoena. (ECF No. 155 at 3). Given Mr. Smith's role, it was both reasonable and necessary for Sparta to seek documents from him. Berries offers no explanation how Sparta could have known, before it issued the subpoena, that Mr. Smith prepared only the report Sparta already had, and no other documents. For these reasons, I conclude that the service of process fee for Mr. Smith, which totals $50.00, is recoverable.

---

[26] Sparta seeks $40.00 in costs for serving Mr. Snider. (ECF Nos. 149 at 3, 149-1 at 39).

### 4. LCD Estimators, Inc. and F.R.I. Public Adjusters

Berries argues that the cost of serving subpoenas *duces tecum* upon LCD Estimators, Inc. and F.R.I. Public Adjusters is duplicative because Sparta also served subpoenas for deposition upon Luis De Freitas, who is the principal of LCD Estimators, Inc., and Robert Inguanzo, who is a former employee of F.R.I. Public Adjusters. (ECF No. 155 at 3). Berries contends that a single deposition subpoena *duces tecum* to these witnesses would have accomplished the same result. (*Id.*). This may be so, but it is not clear on this record. The individuals likely did not have authority to produce company-owned documents, and vice versa. I conclude that the subpoenas served upon LCD Estimators, Inc. and F.R.I. Public Adjusters are not duplicative and, therefore, recommend that the Court award Sparta $80.00 in service costs.[27]

### 5. Luis De Freitas

Berries objects to the cost for serving Mr. De Freitas on January 30, 2018 with a second subpoena for deposition. (ECF No. 155 at 4). Sparta agrees that this cost was unnecessary because Mr. De Freitas was only deposed once. (ECF No. 156 at 5). I therefore recommend that the Court decline to award the $40.00 fee for duplicative service upon Mr. De Freitas.

For the foregoing reasons, I recommend that the Court award Sparta reasonable process server costs totaling **$645.00**.

---

[27] The cost of serving each subpoena was $40.00. (ECF No. 149-1 at 38, 41).

C.   Fees for Transcripts

Sparta seeks to recover costs for deposition transcripts and a hearing transcript,[28] which total $10,851.13. (ECF No. 149 at 3). Sparta provides invoices for these costs.[29] Taxation of deposition costs is authorized by § 1920(2), if the depositions were "necessarily obtained for use in the case." *W&O, Inc*., 213 F.3d at 620-21. Berries does not dispute the necessity of the transcripts, but objects to many of the incidental charges that accompany the deposition transcripts. (ECF No. 155 at 5-15). Sparta concedes some of these charges, namely, for word indices, mini transcripts, expedited delivery, and Errata compliance delivery fees. (ECF No. 156 at 7-8). I therefore recommend that the Court exclude these charges, which total $614.20. Sparta continues to assert that the following incidental charges are recoverable: shipping and handling, copies of exhibits, court reporter appearance fees, and costs related to depositions taken on Saturdays and in the evenings. (ECF No. 155 at 5-15). I address these costs below.

1.   Shipping/Handling and Copies of Exhibits

Courts routinely deny costs for shipping and handling, and copies of exhibits, unless the moving party demonstrates that these items were necessary and not merely ordered for the convenience of counsel. *See e.g., Santana*, 2012 WL 3779013, at *6-7 (denying costs for shipping and handling); *Nelson v. N. Broward Med. Ctr.*, No. 12-61867-CV, 2014 WL 2195157, at *3 (S.D. Fla. May 27, 2014) (denying costs for copies of exhibits).

---

[28] Sparta paid $239.80 for the March 5, 2018 hearing transcript. *See* (ECF No. 149-1 at 28-30).

[29] *See* (ECF No. 149-1 at 10-30).

23

Sparta argues that shipping and handling costs are necessary because "Sparta cannot obtain a printed transcript without it being mailed . . . ." (ECF No. 156 at 7). I disagree. Sparta gives no reason why it could not obtain an electronic copy of the transcript and print it itself.

As for exhibit costs, Sparta argues that copies of the exhibits were necessary because "the court reporter retained all of the actual exhibits" and, with respect to depositions of Berries' experts, the witnesses were directed "to produce [the documents] at their depositions." (ECF No. 156 at 8). As another court in this District recognized, the deposing party "generally provides the exhibits used during the deposition. Consequently, the deposing party should have no need other than convenience for copies of the deposition exhibits." *George v. Fla. Dep't of Corrections*, No. 07-80019-CIV, 2008 WL 2571348, at *6 (S.D. Fla. May 23, 2008), *report and recommendation adopted in part*, No. 07-80019, 2008 WL 11412061 (S.D. Fla. July 7, 2008). Sparta provides no information that demonstrates that the exhibits were copied for any reason other than the convenience of counsel. Although the experts produced documents at their depositions, Sparta does not explain why it did not serve subpoenas *duces tecum* upon them with an earlier return date. For the foregoing reasons, I conclude that costs for shipping and handling, and for copies of exhibits, were incurred primarily for the convenience of counsel. I therefore recommend that the Court decline to award these costs, which total $666.95.

    2.    Saturdays and Evenings

Berries argues that the Court should exclude surcharges for three depositions taken on Saturdays and in the evenings. (ECF No. 155 at 10-11). Sparta argues that it had to

schedule these depositions after normal business hours in order to adhere to an expedited discovery schedule the Court set after Berries filed its disclosure of supplemental damages near the end of the discovery period. (ECF No. 156 at 5-6). The parties conferred and agreed to the dates and times selected for these depositions. (ECF No. 156-3). Under these circumstances, I find that surcharges for Saturday and evening depositions were necessary and, therefore, recommend that the Court award these costs to Sparta, totaling $1,193.08.[30]

### 3.   Court Reporter Appearance Fees

There is a split in this District whether court reporter appearance fees constitute taxable costs. *See Francis v. MSC Cruises, S.A.*, No. 18-61463-CIV, 2019 WL 7370408, at *2 (S.D. Fla. Nov. 19, 2019) (awarding fee), *Newman*, 2007 WL 315098, at *3 (disallowing fee because the fees are not listed in § 1920). The majority position is that these fees are recoverable. *See Rakip v. Paradise Awnings Corp.*, No. 10-20004-CIV, 2014 WL 12737632, at *6 (S.D. Fla. Jan. 2, 2014). I agree that appearance fees are recoverable because the court reporter cannot prepare the transcript unless the reporter is present to transcribe the witness' testimony. Accordingly, I recommend that the Court award Sparta costs for court reporter appearance fees, totaling $1,200.00.[31]

Based on the foregoing, I recommend that the Court award Sparta reasonable costs for transcripts totaling **$9,569.98**.

---

[30] *See* (ECF No. 149-1 at 22-24).

[31] *See* (ECF No. 149-1 at 11, 14, 16).

D.    Fees for Witnesses

Sparta seeks to recover a total of $328.68 in witness fees, which include an attendance fee and mileage allowance for each witness. (ECF Nos. 148 at 2, 149 at 5, 156 at 8). Berries argues that the witness fees paid to Luis De Freitas are duplicative because he was deposed once but paid twice. (*Id.*). Sparta withdraws its request for reimbursement of the duplicative witness fee and mileage costs paid to Mr. De Freitas, (ECF No. 156 at 5), and I therefore recommend that the Court exclude these costs, which total $62.00. (ECF Nos. 148 at 2, 156 at 5).

Berries argues that Robert Snider and Steven Edmonson should not have been paid any witness fees because they are parties in interest. (ECF No. 155 at 15-16). They are not, however, parties to this suit. Berries is the Plaintiff, and Messrs. Snider and Edmonson are officers and shareholders of Berries. (ECF No. 155 at 16). "The courts that have addressed the issue have ruled that costs associated with the testimony of a corporate representative not personally involved in the litigation are taxable." *E.E.O.C. v. Winn-Dixie Montgomery, LLC*, No. 09-0643-C, 2011 WL 13248688, at *2 (S.D. Ala. March 24, 2011) (citing cases). I therefore conclude that the witness fees for Messrs. Snider and Edmonson are taxable.

Berries further objects to the mileage allowance paid to the witnesses. Title 28 U.S.C. § 1821 permits a witness payment of $40.00 per day for attendance in court or at a deposition, plus a common carrier travel expense or mileage allowance. *See* 28 U.S.C. § 1821(b), (c)(2). Berries argues that Sparta failed to provide evidence of the number of miles traveled and used a higher mileage rate than permitted by law. (ECF No. 155 at 16-17). According to Sparta, it calculated the mileage payment based

upon the number of miles between the witness' address identified on the subpoena and counsel's office, where the deposition took place. (ECF No. 156 at 8). These addresses are part of the record, (ECF No. 156-2 at 10, 14; ECF Nos. 131, 134), and thus the number of miles can be determined from a simple Google Maps search. I used Google Maps to confirm that the mileage payments Sparta made do not exceed the number of miles that the witnesses had to travel to and from their depositions.[32] Sparta has sufficiently demonstrated the reasonableness of the mileage payments it made. *See Lopez-Easterling v. Charter Comm'ns.*, No. 2:14-cv-01493-RDP, 2017 WL 7406520, at *5 (N.D. Ala. Dec. 15, 2017) (sufficient evidence of mileage payment where the Court relied on a search on Mapquest and evidence of payment made to the witness despite no record of a receipt or other evidence of costs).

With respect to the mileage rate used, Sparta concedes that it made an error and agrees that the total cost for mileage should be reduced. (ECF No. 156 at 8). The applicable standard mileage rate at the time of the depositions was 54.5 cents per mile.[33] (*Id.*). When this rate is multiplied by the number of miles traveled that Sparta used for each of the five witnesses, the total amount is $62.66, which is $4.02 less than the mileage payments Sparta

---

[32] In some instances, the number of miles that Sparta calculated for each witness appears to be *less* than the number that Google Maps displays. I note that the record includes two different addresses for Robert Snider and Steven Edmonson, (ECF Nos. 131 at 1, 134 at 1). However, when calculating those trips using Google Maps, Sparta included fewer miles in its mileage payment than Google Maps displays, which is to Berries' benefit.

[33] *See* "Standard Mileage Rates for 2018 Up from Rates for 2017" (Dec. 14, 2017), www.irs.gov/newsroom/standard-mileage-rates-for-2018-up-from-rates-for-2017.

made. I therefore recommend that the Court deduct $4.02 from the total amount of witness fees.

Accordingly, I recommend that the Court award Sparta **$262.66** in reasonable witness fees.

    E.    <u>Conclusion</u>

I have thoroughly reviewed the invoices Sparta submitted in support of its request for costs and find that, other than the reductions specified above, the costs sought are reasonable. Based upon the foregoing, I recommend that the Court award Sparta **$10,877.64** in reasonable costs.

## IV.    RECOMMENDATION

I **RESPECTFULLY RECOMMEND** that the Court **GRANT IN PART** Sparta's Motions for Costs and Attorneys' Fees, (ECF Nos. 148, 157), and award Sparta **$10,877.64** in reasonable costs, and **$95,808.50** in reasonable attorneys' fees, for a total amount of **$106,686.14**.

## V.    OBJECTIONS

**No later than fourteen days from the date of this Omnibus Report and Recommendation** the parties may file any written objections to this Omnibus Report and Recommendation with the Honorable K. Michael Moore, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in Miami, Florida this 20th day of October

2020.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable K. Michael Moore
    Counsel of Record